**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| BEEF PRODUCTIONS, INC., Plaintiff, | ) | |
| v. | ) | Case No. 10-1244-SAC-KGS<br>Division ____ |
| MWI VETERINARY SUPPLY CO. Defendant. | ) | |

## COMPLAINT

COMES NOW Beef Productions, Inc., ("Plaintiff") and for its cause of action against MWI Veterinary Supply Co. ("Defendant") states and alleges as follows:

## PARTIES, JURISDICTION, & VENUE

1. Beef Productions, Inc., is a Kansas corporation with its principal place of business in Chase County, Kansas. Beef Productions, Inc is owned by Gary Hatcher.

2. MWI Veterinary Supply Co. ("MWI") is a Delaware corporation with its principal place of business in Meridian, Idaho; MWI has designated The Corporation Company, Inc. as its resident agent, located at 112 SW 7th Street, Suite 3C, Topeka, Kansas 66603.

3. Plaintiff's injuries occurred in Chase County, Kansas—the location of the Plaintiff's residence, principal place of business, and former and current land holdings.

4. Jurisdiction over Defendant is proper because Defendant regularly transacts business in Kansas, operates a place of business in Kansas, and has committed tortious acts in Kansas with injuries occurring in Kansas.

5. Jurisdiction is proper pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendant are of diverse citizenship and Plaintiff seeks damages in excess of $75,000, excluding costs and interest.

6. Venue is proper in the District of Kansas under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to these claims occurred in this district.

## FACTS COMMON TO ALL COUNTS

7. Plaintiff operates a cattle ranching business in Chase County, Kansas.

8. Plaintiff used Jencine 4 + Lepto-5 ("Jencine 4") to vaccinate its cattle during the 2006-07 and 2007-08 cattle seasons.

9. Plaintiff purchased all of the Jencine 4 it used to vaccinate its cattle from Defendant.

10. During the 2006-07 cattle season, Plaintiff's cattle experienced elevated death loss and lower weight gain.

11. On or about August 2007, following the 2006-07 cattle season, and consistent with Plaintiff's customary and usual practice, Plaintiff sold its cattle "off grass" with the cattle being approximately 7% underweight.

12. To determine the cause of its cattle's elevated death loss and lower weight gain Plaintiff contacted its veterinarian in early 2008.

13. Plaintiff was advised to continue to vaccinate with Jencine 4 during the 2007-08 cattle season and also to revaccinate the cattle with Express 5.

14. Plaintiff continued to vaccinate its cattle with Jencine 4 throughout the 2007-08 cattle season.

15. During the 2007-08 cattle season, Plaintiff's cattle experienced substantially elevated death loss and substantially reduced weight gain.

16. On or about July 28, 2008 Intervet/Schering-Plough Animal Health ("Intervet"), issued a large-scale recall of Jencine 4, of which Defendant was duly notified.

17. Plaintiff did not receive notice of the Jencine 4 recall from MWI or Intervet.

18. On or about August 20, 2008, Plaintiff's cattle were significantly underweight which caused Plaintiff to send its cattle to the feedlot to simulate weight gain so that Plaintiff could sell its cattle, use the proceeds to make payments toward Plaintiff's line of credit, and then repurchase cattle for the 2008-09 cattle season.

19. Beginning in approximately September 2008, and while Plaintiff's cattle remained in the feedlot, the market price for cattle substantially declined.

20. In approximately September 2008, Plaintiff's bank requested that Plaintiff provide it with a repayment plan for Plaintiff's outstanding line of credit.

21. In approximately November 2008, Plaintiff's bank discontinued Plaintiff's line of credit, which prevented Plaintiff from procuring cattle for 2008-09 cattle season.

22. During December 2008 and January 2009, Plaintiff sold its remaining cattle from the 2007-08 cattle season at a substantial loss.

23. In early 2009, Plaintiff's deteriorating financial condition forced Plaintiff to enter into an Auction Contract for the sale of 608 acres of Chase County, Kansas ranch and farm land, which Plaintiff owned and used to operate its cattle ranching business.

24. On or about March 12, 2009, Plaintiff's Chase County ranch and farm land was sold at auction pursuant to the Auction Contract, for a price that was substantially below the value of the land to Plaintiff's business.

25. As a direct and proximate result of Defendant's acts or omissions Plaintiff suffered damages, including, but not limited to, the unnecessary expense of sending cattle to a feed lot, a substantial decline in the market value of Plaintiff's cattle, the loss of Plaintiff's line

of credit and resulting inability to repurchase cattle for the subsequent cattle season and lost profits resulting therefrom, and Plaintiff's loss of 608 acres of Chase County ranchland.

26. In approximately March 2009, Plaintiff first learned about the Jencine 4 recall from an unrelated third party, approximately 8 months after Defendant was notified about the Jencine 4 recall.

27. Upon learning of the recall of Jencine 4, Plaintiff contacted Intervet and soon began settlement negotiations.

28. In approximately April 2009, Plaintiff met with Intervet to calculate the direct damages the defective Jencine 4 caused to Plaintiff's cattle herd; this calculation of damages did not include the additional damages, described above, which Plaintiff incurred as a result of Defendant's failure to notify Plaintiff of the Jencine 4 recall.

29. In early August 2009, Plaintiff entered into a confidential Release Agreement with Intervet, which expressly reserved all claims, rights, and remedies that Plaintiff may have against MWI for its failure to notify Plaintiff of the recall.

## COUNT I
## PRODUCTS LIABILITY: FAILURE TO WARN

30. Plaintiff incorporates by reference all prior allegations in its Petition.

31. Defendant sold defective Jencine 4 to Plaintiff.

32. On or about July 28, 2008, Defendant came to know, or should have known, that the Jencine 4 it sold to Plaintiff was defective.

33. Also on or about July 28, 2008, Defendant knew, or should have known, that the defective Jencine 4 presented a substantial risk of substantial, and otherwise avoidable, harm to Plaintiff, Plaintiff's cattle, and Plaintiff's cattle ranching business.

34. Defendant had a direct business relationship with Plaintiff such that Defendant could have easily, and at little expense, taken such steps as would be reasonably necessary to notify Plaintiff of the Jencine 4 recall.

35. Plaintiff, though exercising reasonable diligence, did not learn about the Jencine 4 in a timely manner.

36. Defendant, as a product supplier, had a duty to provide Plaintiff with reasonable post-sale notice of the Jencine 4 recall.

37. Defendant unreasonably failed to provide Plaintiff with reasonable notice of the Jencine 4 recall, despite the negligible cost of doing so.

38. Had Defendant provided Plaintiff with timely notice of the Jencine 4 recall, Plaintiff would have heeded Defendant's timely notice and taken such steps as would have been reasonably necessary to mitigate the losses that resulted from the defective Jencine 4.

39. As a direct and proximate result of the foregoing, Plaintiff sustained significant and otherwise avoidable damages, as stated above, in excess of Seventy-Five Thousand ($75,000.00).

WHEREFORE, Plaintiff prays for judgment against Defendant for damages in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest, for the costs of this action, for attorneys' fees, and for such other and further relief as the Court deems just and equitable.

## COUNT II
## BREACH OF IMPLIED WARRANTY

40. Plaintiff incorporates by reference all prior allegations in its Petition.

41. Prior to the time that Jencine 4 was used by Plaintiff, Defendant impliedly warranted that Jencine 4 was of merchantable quality and safe and fit for its intended use.

42. Plaintiff is and was unskilled in research, design, and manufacture of Jencine 4.

43. Plaintiff reasonably relied on the skill, judgment, and implied warranty of Defendant in using Jencine 4.

44. Jencine 4 was neither fit for its intended use nor of merchantable quality in that it had dangerous propensities when put to its intended use and would cause injuries to its intended users.

45. The actions of Defendant contributed to cause the damage done to Plaintiff and its cattle.

46. As a direct and proximate result of Defendant's breach of implied warranty, Plaintiff sustained significant and otherwise avoidable damages, as stated above, in excess of Seventy-Five Thousand ($75,000.00).

WHEREFORE, as a result of the foregoing, Plaintiff sustained damages, as stated above, in excess of Seventy-Five Thousand Dollars ($75,000.00), with such further and other relief that the Court may deem fair and just.

**COUNT III**
**STRICT LIABILITY**

47. Plaintiff incorporates by reference all prior allegations in its Petition.

48. Defendant was engaged in the business of distributing Jencine 4.

49. The Jencine 4 used by Plaintiff reached Plaintiff without substantial change in the condition in which it was manufactured.

50. Plaintiff used Jencine 4 in the manner for which it was intended and a manner that was reasonably foreseeable.

51. Plaintiff was not aware, nor could it have timely discovered, the dangerous nature of the Jencine 4 without Defendant first notifying Plaintiff.

52. The Jencine 4 used by Plaintiff was in a defective condition and was unreasonably dangerous in that it was defective in design, manufacturing, instructions and/or warnings to the

consuming public, and such defects existed at the time the Jencine 4 was sold and/or distributed by Defendant.

53. The actions of Defendant contributed to cause the damage done to Plaintiff and its cattle.

54. As a direct and proximate result of the defective Jencine 4 that Defendant sold and/or distributed to Plaintiff, Plaintiff has incurred significant and otherwise avoidable damages, as stated above, in excess of Seventy-Five Thousand ($75,000.00).

WHEREFORE, Plaintiff prays for judgment against Defendant for damages in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest, for the costs of this action, for attorneys' fees, and for such other and further relief as the Court deems just and equitable.

**COUNT IV**
**NEGLIGENCE**

55. Plaintiff incorporates by reference all prior allegations in its Petition.

56. Defendant had a duty to provide a timely and reasonable notification of the Jencine 4 recall to Plaintiff.

57. Defendant unreasonably failed to provide Plaintiff with reasonable or timely notification of the Jencine 4 recall.

58. As a direct and proximate result of Defendant's negligent failure to notify Plaintiff of the Jencine 4 recall, Plaintiff has incurred significant and otherwise avoidable damages, as stated above, in excess of Seventy-Five Thousand ($75,000.00).

WHEREFORE, Plaintiff prays for judgment against Defendant for damages in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest, for the costs of this action, for attorneys' fees, and for such other and further relief as the Court deems just and equitable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court enter judgment in its favor for all of Plaintiff's damages alleged above, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), the precise amount of which is to be determined at the time of trial, including attorneys' fees, costs, and any other damages or statutory penalties to which Plaintiff may be entitled.

**DEMAND FOR JURY TRIAL**

PLAINTIFF REQUESTS A TRIAL BY JURY.

**DESIGNATION OF PLACE OF TRIAL**

Pursuant to Local Rule 40.2, Plaintiff hereby designates Wichita, Kansas, as the place of trial.

FOULSTON SIEFKIN LLP

By: ______________________
Scott C. Nehrbass, KS #16285
Joshua T. Hill, KS #24141
9 Corporate Woods, Suite 450
9200 Indian Creek Parkway
Overland Park, KS 66210-2017
(913) 498-2100
(913) 498-2101 FAX

ATTORNEYS FOR PLAINTIFF